IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE WISCONSIN COMPRESSED
AIR CORPORATION,

                Plaintiff,

      v.

GARDNER DENVER, INC.,

                Defendant.

OPINION and ORDER

07-cv-508-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action for injunctive and monetary relief, plaintiff The Wisconsin Compressed Air Corporation contends that defendant Gardner Denver, Inc. breached its distributorship agreement and violated the Wisconsin Fair Dealership Law by appointing another distributor for truck blowers in territory assigned to plaintiff.  Jurisdiction is present under 28 U.S.C. § 1332.

Defendant has filed a motion for summary judgment on plaintiff's claims of breach of contract and its statutory claims that plaintiff violated Wis. Stat. §§ 135.03 and 135.04 of the Wisconsin Fair Dealership Law by assigning a second distributor in Wisconsin; plaintiff has filed a partial motion for summary judgment on only its fair dealership claims.

1

Because the parties' distributorship agreement assigns plaintiff a nonexclusive distributorship in Wisconsin, defendant's assignment of a second distributor in Wisconsin did not breach the agreement or cause a "substantial change in the competitive circumstances" of the agreement in violation of Wis. Stat. § 135.03; defendant's motion for summary judgment will be granted on those issues.  However, defendant's assignment of a second distributorship was a violation of Wis. Stat. § 135.04 because it caused a "substantial change in the competitive circumstances" of plaintiff's truck blower distributorship and defendant failed to provide plaintiff with 90 days' written notice.  Therefore, plaintiff's partial motion for summary judgment will be granted on that issue.  The only issue remaining in this case will be the amount of damages defendant will owe plaintiff for its failure to provide 90 days' written notice before assigning a second distributor in Wisconsin, an issue the court would like counsel to brief before trial.

From the parties' proposed findings of facts, I find the following facts to be material and undisputed.

UNDISPUTED FACTS

A.  <u>Parties</u>

Plaintiff The Wisconsin Compressed Air Corporation is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin.  Plaintiff is in the business of selling

compressed air equipment, including air compressors, blower and vacuum pump systems, truck blowers and accompanying accessories in the state of Wisconsin.

Defendant Gardner Denver, Inc. is a Delaware corporation with its principal place of business in Quincy, Illinois. Defendant is in the business of manufacturing air compressors and truck blowers, among other things.

### B. Truck Blower Distributor Agreement

On August 1, 1996, plaintiff and defendant entered into an agreement regarding the sale of Gardner Denver truck blowers, entitled "U.S. and Canadian Blower Distributor Agreement." (A truck blower is a product used on tank trucks to convey dry powered products out of a truck tank into a receptacle.) Defendant drafted the agreement.

Section I.A. of the agreement states, under the heading "Appointment of Distributor," that "[defendant] appoints [plaintiff] . . . as a non-exclusive, authorized Distributor for the [Gardner Denver truck blowers]." Section V.A.1. states, under the heading "Relationship to Parties and Controlling Laws," that "This Agreement is nonexclusive and may not be assigned by Distributor without written consent of Company." An addendum to Section I states that defendant "reserves the right to allow its current industrial blower or compressor distributors to sell truck blowers for industrial applications as an incidental part of their business. Such distributors will not be allowed as great a discount on the truck blowers as

3

Truck Blower Distributors." The term "Truck Blower Distributors" is defined in the addendum to include "only those Distributors [that defendant has] designated as a Truck Blower Distributor."

The agreement assigns to plaintiff an "Area of Primary Responsibility," defined as "[t]he geographical area . . . in which [plaintiff] shall be measured in fulfilling the responsibilities specified in this Agreement." Plaintiff's area of primary responsibility is the entire state of Wisconsin. Under the agreement, plaintiff is required to "use its best efforts to sell, advertise and promote the sale and use of Products throughout the Area of Primary Responsibility and to fulfill [defendant's] sales targets." In addition, the agreement requires plaintiff to order and maintain adequate stock of products and parts, provide service and installation on products, employ adequate sales personnel, advertise and participate in trade shows. A sales policy sent out on September 1, 2000 explained that the sale of truck blowers outside a distributor's area of primary responsibility was prohibited under the agreement.

In § VI of the agreement, entitled "Direct Sales," defendant "reserves the right to deal directly with any customer or prospective customer in the Area of Primary Responsibility." An addendum adds that defendant "reserves the right to deal directly with large fleet, OEM, and national accounts when, in [defendant's] judgment, such direct dealing is appropriate and necessary." The addendum provides that to the extent the addendum conflicts with the standard form, "this Addendum shall control."

4

The 1996 Distributor Agreement has been in full force and effect from August 1, 1996 until the present date.  The agreement has not been modified since it was executed.

### C.  Plaintiff's Distribution of Gardner DenverTruck Blowers

Plaintiff has sold Gardner Denver products, including truck blowers, since approximately 1971.  Over the past ten years, plaintiff's employees have devoted approximately seven thousand hours to the sale and service of Gardner Denver truck blower products (approximately 27% of its employees' time); moreover, plaintiff has devoted at least 30% of its revenue to the sale and service of Gardner Denver truck blower products over that same period.  Plaintiff has derived 15% of its gross profits from the sale of Gardner Denver truck blower products over the past twelve years.

From 1989 until October 3, 2006, plaintiff was the only authorized distributor for Gardner Denver truck blower products.  Its area of primary responsibility was Wisconsin.

### D.  Drum and Stuart Tank

In January 2004, defendant acquired a company previously known as Drum Industries.  Drum manufactured products for the trucking industry under the Drum product line, including truck blowers.  Drum had its own network of distributors throughout the United States and Canada.

5

After defendant purchased Drum, it had distributors of Gardner Denver truck blowers and distributors of Drum truck blowers. In 2006, defendant did an evaluation of its distribution network in Wisconsin in light of its purchase of Drum to determine whether it had the "proper fit" of distributors for the products. A similar evaluation had already been done with distributors in other parts of the country.

Representatives of defendant, Robert Brooks and Chip Jones, visited distributors in the Midwest, evaluated whether any distribution changes were appropriate and consulted with Don Bierens to decide whether any changes would be made.

Stuart Tank Sales Company sells and services cargo tank trailers used to transport various products such as petroleum, milk, and dry products. In addition, Stuart Tank sells cargo tank parts and accessories, including truck blowers. Stuart Tank has been a distributor for Drum products, including truck blowers, since 1991.

After defendant acquired Drum, it had two truck blower distributors in Wisconsin: plaintiff, which distributed Gardner Denver truck blowers, and Stuart Tank, which distributed Drum truck blowers (and other Drum products). Defendant's evaluation of distributors in the Midwest led it to give Stuart Tank direct access to the Gardner Denver truck blower line. On September 27, 2006, defendant notified plaintiff that it was appointing Stuart Tank as a distributor of Gardner Denver truck blowers in Wisconsin, that no changes were being made to plaintiff's Distributor Agreement and that plaintiff would

6

continue to be an authorized distributor of Gardner Denver truck blowers as it was before Stuart Tank's appointment.

On October 3, 2006, defendant's representative, Chip Jones, notified Stuart Tank that it was now authorized to purchase defendant's truck blowers directly from defendant. Prior to October 3, 2006, Stuart Tank purchased most of its Gardner Denver truck blowers from plaintiff. For example, in the fiscal year 2006 (before October 3, 2006), Stuart Tank sold 16 Gardner Denver truck blowers, 14 of which had been purchased from plaintiff.

As territory manager, Chip Jones was responsible for making sure that distributors such as plaintiff were complying with the terms of their agreements with defendant. Jones never notified plaintiff that it was not in compliance with the parties' agreement. In addition, Jones never provided plaintiff an opportunity to correct any deficiencies in its performance. When asked about the alleged deficiencies in plaintiff's performance, Chip Jones testified as follows: "I'm not sure that, that it was stated that Plaintiff failed to meet their obligations. It was more so we felt Stuart Tank Sales would perform the services better for our territory."

E. The Impact on Plaintiff of Stuart Tank as Second Wisconsin Distributor

Stuart Tank can now sell both of defendant's blower lines: Drum and Gardner Denver, which means that Stuart Tank has a broader truck blower product line than

7

plaintiff.   According to Jeff Cordray, a Senior Economist for Laurits R. Christensen Associates, Inc., "[t]he addition of a second distributor of [Defendant's truck blowers] in the state of Wisconsin has had, and will continue to have, an adverse impact on Plaintiff's sales of blowers, parts, and service."  (The parties dispute the amount of money plaintiff has lost as a result of Stuart Tank's assignment in Wisconsin; plaintiff estimates its losses to be between $276,000 and $342,000.)

Kirk Russell is the vice president of Stuart Tank and is responsible for the operations of the company, including sales.  Russell has worked for Stuart Tank for more than 20 years. From his twenty years of experience in the market, Russell believes that plaintiff will be in a weaker competitive position now that Stuart Tank has defendant's permission to sell Gardner Denver truck blowers.  In addition, Stuart Tank's added competition in Wisconsin for the sale of defendant's truck blowers "can only have the obvious effect of suppressing" the price of defendant's truck blowers, according to Russell.  He believes that Stuart Tank's aggressive sales tactics, good service and ability to occupy the relevant market areas will make Stuart Tank a viable competitor in the sale of Gardner Denver truck blowers.

When defendant authorized Stuart Tank to sell its truck blowers, defendant's representative, Chip Jones, explained that Stuart Tank would be more competitive in the marketplace with Gardner Denver truck blower products than plaintiff had been, and that Stuart Tank would be "a natural fit" to sell defendant's truck blower products because Stuart

8

Tank was "in the trucking industry," "install[ed] the product," and was "in the faces of the trucking people."

OPINION

A. <u>Choice of Law</u>

The parties do not dispute that Wisconsin law applies to their dispute so I need not conduct a choice of law analysis.  <u>FutureSource LLC v. Reuters Ltd.</u>, 312 F.3d 281, 283 (7th Cir. 2002); <u>State Farm Mutual Automobile Insurance Co. v. Gillette</u>, 2002 WI 31, ¶ 51, 251 Wis. 2d 561, 641 N.W.2d 662.

B.  <u>Breach of Contract</u>

1.  <u>Breach of contract by assigning second distributor in Wisconsin</u>

The primary goal of contract construction is to determine and give effect to the parties' intention at the time the contract was made.  <u>Farm Credit Services v. Wysocki</u>, 2001 WI 51, ¶ 12, 243 Wis. 2d 305, 627 N.W.2d 444.  When the terms of the contract are plain and unambiguous, the court must construe the contract according to its plain meaning.  <u>Id.</u> Plaintiff contends that defendant's decision to assign a second distributor violated its distributor agreement with plaintiff because the agreement granted plaintiff the exclusive right to sell truck blowers in Wisconsin.

9

The distributorship agreement states that defendant appoints plaintiff "as a non-exclusive, authorized Distributor" and later states that the agreement is "nonexclusive." Plaintiff acknowledges this language, but contends that the contract "as a whole" grants plaintiff an exclusive right to distribute truck blowers in Wisconsin.  Plaintiff points out that in the addendum to the agreement, defendant reserved explicitly its right to allow "current industrial blower or compressor distributors" to sell truck blowers "as an incidental part of their business."  In addition, in Section VI, defendant reserved its right to deal directly with any customer, and in the addendum reserved the right to deal directly with large fleet and other specific accounts, when "appropriate and necessary."

According to plaintiff, the use of the term "nonexclusive" to mean that plaintiff had a nonexclusive right to distribute would make these express reservations meaningless or at least demonstrate that the scope of the term "nonexclusive" is ambiguous.   Plaintiff misapprehends the situation.  When the sections are read together, the agreement provides that defendant has (1) reserved its right to assign additional distributors by making plaintiff a "non-exclusive" distributor (in § § I and V.A.1.); (2) reserved its right to deal directly with certain customers on certain grounds and other customers generally (in § VI and in the addendum); and (3) reserved its right to allow certain distributors of other products to sell truck blowers "incidentally" (in the addendum to § I).  Each of these rights is distinct.

Although the third reservation appears to reserve to defendant a limited right to allow

10

"incidental" distributors in conflict with the general right reserved by making plaintiff a "nonexclusive" distributor, a closer inspection of the language of the addendum shows that the two rights are distinct.  The addendum distinguished the distributors of "incidental" truck blowers from distributors that defendant had assigned as "Truck Blower Distributors" and made "incidental" distributors ineligible for a discount available to truck blower distributors.  Thus, the addendum specifies that defendant may continue to allow distributors *other than* truck blower distributors to make incidental sales of truck blowers; this right is distinct from the right to appoint additional truck blower distributors.  In addition, in the same addendum, defendant indicates that there may be more than one truck blower distributor by defining Truck Blower Distributors in the plural as "*those* Distributors [that defendant has] designated as a Truck Blower Distributor."  Because the distributorship agreement granted plaintiff only a non-exclusive right to distribute in Wisconsin, defendant did not breach the agreement by assigning a second truck blower distributor in Wisconsin. Defendant's motion for summary judgment will be granted on that claim.

2. <u>Breach of implied covenant of good faith and fair dealing</u>

Next, plaintiff contends that defendant's assignment of a second distributor breached an implied covenant of good faith and fair dealing even if it did not breach the distributorship agreement.  "Every contract implies good faith and fair dealing between the

11

parties to it." Brew City Redevelopment Group, LLC v. The Ferchill Group, 2006 WI App 39, ¶ 12, 289 Wis. 2d 795, 714 N.W.2d 582 (citation omitted).  However, there can be no breach of good faith and fair dealing "where the contracting party complains of acts of the other party that are specifically authorized in their agreement." M&I Marshall and Ilsley Bank v. Schlueter, 2002 WI App 313, ¶ 15, 258 Wis. 2d 865, 655 N.W.2d 521 (citing Super Valu Stores, Inc. v. D-Mart Food Stores, Inc., 146 Wis. 2d 568, 577, 431 N.W.2d 721 (Ct. App. 1988)); see also Market Street Associates Ltd. Partnership v. Frey, 941 F.2d 588, 593-596 (7th Cir. 1991) (duty of good faith may be simply duty to avoid taking deliberate advantage of oversight of partner and avoid opportunistic behavior that has no place in "mutually dependent, cooperative relationship" of contract).  Because the plain language of the distributorship agreement granted plaintiff no more than a "non-exclusive" distributorship in Wisconsin, defendant's assignment of a second distributor in Wisconsin was specifically authorized by the terms of the parties' agreement.  It could not have been "bad faith" for defendant to assign a second distributor under a right it reserved explicitly in the distributorship agreement.  Therefore, defendant's motion for summary judgment will be granted on plaintiff's claim that defendant breached an implied covenant of good faith and fair dealing by assigning a second distributor.

3.  Miscellaneous claims of breach

In addition to its claim that it had an exclusive distributorship, plaintiff contends that defendant breached the distributor agreement or an implied covenant of good faith and fair dealing by failing to maintain reasonable communication, delaying the processing of warranty claims, failing to deliver products in a timely fashion, failing to provide plaintiff with access to necessary information readily available to Stuart Tank and providing Stuart Tank with favorable treatment through exclusive product line appointment and training. In a footnote in its brief in chief, defendant argued that plaintiff "fails to allege or establish that any term or provision in the Distributor Agreement was breached by such conduct." In response, plaintiff argues simply that defendant "has not addressed these claims" and has therefore "waived" the issue for the purpose of receiving a summary judgment as to those claims.

Plaintiff has gotten it wrong.  To be entitled to summary judgment on plaintiff's assorted breach of contract claims, defendant needed only to point out problems plaintiff would face in proving its claims; at that point, plaintiff was required to "set out specific facts" sufficient to allow a reasonable jury to find in his favor on those claims.  Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).  Defendant probably should have made its argument in the body of its brief and not simply in a footnote, but it did make the argument. Defendant's contention that plaintiff failed to "allege or establish" breach by the acts alleged

13

in the complaint was sufficient to point out problems to which plaintiff should have responded by setting out specific facts sufficient to allow a reasonable jury to find in its favor on those claims.  It did not.  Therefore, defendant's motion for summary judgment will be granted on plaintiff's remaining breach of contract claims and breach of implied covenant of good faith and fair dealing.


### C.  Wisconsin Fair Dealership Law Claims

The Wisconsin Fair Dealership Law was enacted to promote fair business relations between dealers and grantors, protect dealers against unfair treatment by grantors and provide dealers with rights and remedies in addition to those existing in contract or at common law.  The law defines a dealership as an agreement between two or more persons in which one is granted the right to sell or distribute goods or services, "in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise." Wis. Stat. § 135.02(3)(a).  In this case, it is undisputed that the parties shared a "community of interest" in the selling of truck blowers and that the distributorship agreement between the parties constitutes a dealership under the Wisconsin Fair Dealership Law.  What the parties do dispute is whether defendant's assignment of a second distributor in Wisconsin without notice and an opportunity to cure any alleged defects violated two sections of the Wisconsin Fair

14

Dealership Law:  Wis. Stat. §§ 135.03 and 135.04.

1.  <u>Violation of Wis. Stat. § 135.03</u>

Under § 135.03, a dealership grantor is prohibited from "terminat[ing], cancel[ling], fail[ing] to renew or substantially chang[ing] the competitive circumstances of a dealership agreement without good cause."  Plaintiff contends that defendant  "substantially changed" plaintiff's competitive circumstances by assigning a second distributor in plaintiff's distribution territory.  As I have concluded, defendant's assignment of a second distributor did not breach the terms of the parties' dealership agreement because the agreement granted plaintiff only "non-exclusive" distributorship in Wisconsin.  This conclusion is fatal to plaintiff's claim under § 135.03 which prohibits "substantial changes" only if they affect the "competitive circumstances of *the dealership agreement*."  Wis. Stat. § 135.03 (emphasis added).

The courts have held repeatedly that when a dealership agreement provides for only "non-exclusive" dealership rights in an area, a grantor may assign additional dealers to the area without violating § 135.03.  <u>Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.</u>, 146 Wis. 2d 568, 431 N.W2d 721 (Ct. App. 1988) (when grantor had right to grant franchises without limitation and dealer had no exclusivity right, grantor's decision to grant franchise to another store in dealer's area did not constitute substantial change in competitive

15

circumstances of dealership agreement); <u>Kinn v. Coast Catamaran Corp.</u>, 582 F. Supp. 682, 684-86 (E.D. Wis. 1984) (appointment of another dealer in plaintiff's sales territory does not constitute substantial change in competitive circumstances if dealership agreement gave plaintiff non-exclusive sales territory); <u>Braumann Paper Co. v. Congoleum Corp.</u>, 563 F. Supp. 1, 3-4 (E.D. Wis. 1981) (same).   Because plaintiff's distributorship agreement provided for a "non-exclusive" dealership, defendant did not violate § 135.03 by assigning a second distributor in the area.  Defendant's motion for summary judgment will be granted and plaintiff's motion for partial summary judgment will be denied on this issue.


2.  <u>Violation of Wis. Stat. § 135.04</u>

Section 135.04 requires a dealership grantor to "provide a dealer at least 90 days' prior written notice of . . . substantial change in competitive circumstances."  The notice is to state "all the reasons for . . . substantial change in competitive circumstances" and requires the grantor to allow the dealer 60 days "in which to rectify any claimed deficiency."

It is undisputed that defendant did not follow the notice and cure procedures required in § 135.04 before assigning Stuart Tank as a second distributor.  The only question is whether defendant's assignment of Stuart Tank as a second distributor in Wisconsin amounted to a "substantial change in competitive circumstances" under § 135.04.

Defendant argues that because the distributorship agreement allowed defendant to

16

assign an additional dealer to Wisconsin, the assignment of Stuart Tank could not have been a "substantial change in competitive circumstances" under § 135.04.  However, unlike § 135.03, the "substantial change" sufficient to trigger the notice and repair provisions of § 135.04 need not be changes made "to a dealership agreement"; any "substantial change" in the competitive circumstances of a dealership triggers the notice and repair provisions of § 135.04.  Techmaster, Inc. v. Compact Automation Products, LLC, 462 F. Supp. 2d 932 (W.D. Wis. 2006) (citing Jungbluth v. Hometown Oil, Inc., 201 Wis. 2d 320, 336, 548 N.W.2d 519 (1996)).  The Supreme Court of Wisconsin made it clear in Jungbluth that, unlike § 135.03, § 135.04 does not apply only to "substantial changes in competitive circumstances" that affect the dealership agreement.

No Wisconsin court has addressed the scope of activity that could constitute a "substantial change in competitive circumstances" under § 135.04.  In Remus v. Amoco Oil Co., 794 F.2d 1238, 1240-41 (7th Cir. 1986), the Court of Appeals for the Seventh Circuit suggests two possibilities for the scope of the phrase "substantial change in competitive circumstances": it "may be intended simply to protect the dealer against 'constructive termination'" or it "may go somewhat further . . . and protect dealers against new competition that has substantially adverse although not lethal effects" such as allowing or engaging in "intrabrand" competition that is "too close for comfort."  In the absence of any guidance from the state courts, I will look to the purpose of the Wisconsin Fair Dealership

17

Law and the approach the Wisconsin Supreme Court adopted in <u>Jungbluth v. Hometown</u> <u>Oil, Inc.</u>, 202 Wis. 2d 320, 336, 548 N.W.2d 519 (1996), to determine which of these two possibilities better describes the scope of "substantial change in competitive circumstances."

In <u>Jungbluth</u>, the state supreme court explained that the explicit purpose of the Wisconsin Fair Dealership Law is "to protect dealers against unfair treatment by grantors." From this, it concluded that the notice requirement in § 135.04 should be read to "afford the dealership the opportunity to react and protect himself from the potentially devastating affects [sic] of an overreaching grantor" that changes the competing circumstances of the dealer's business. <u>Id.</u>, 201 Wis. 2d at 330-31, 548 N.W.2d 519. The court declined to read the statute more narrowly than it was written by "insert[ing] the phrase 'of a dealership agreement'" into § 135.04 to make it parallel with § 135.03. <u>Id.</u> at 333.

Although the Court of Appeals for the Seventh Circuit speculated in <u>Remus</u>, 794 F.2d at 1240, that the phrase "substantial change in competitive circumstances" could mean no more than "constructive termination," <u>Jungbluth</u> suggested that a Wisconsin court would favor a broader reading of the phrase. The statute says "substantial," not "fatal"; to read in the phrase "constructive termination" amounts to the same "insertion" the court declined to make in <u>Jungbluth</u>, 201 Wis. 2d at 330-31, 548 N.W.2d 519. As the court described it, the goal of the fair dealership law is to protect dealers from "*potentially* devastating" effects on their ability to compete in the market by overreaching grantors. <u>Id.</u> at 331. In light of

18

the purpose of the Wisconsin Fair Dealership Law and the approach of the court in Jungbluth, I conclude that a grantor "substantially changes" a dealer's circumstances by allowing or engaging in any "intrabrand" competition likely to have a serious effect on a dealer's ability to continue to compete in that market. Remus, 794 F.2d at 1240-41; see also Lee Beverage Co., Inc. v. I.S.C. Wines of California, Inc., 623 F. Supp. 867 (E.D. Wis. 1985) (grantor's sale of some, but not all, of product lines sold by plaintiff under distributorship agreement "significantly alter[ed] the competitive circumstances" because sale "drastically reduced the product lines distributed" by plaintiff in Wisconsin).

In this case, defendant's assignment of Stuart Tank as a second distributor in Wisconsin had a serious effect on plaintiff's ability to continue competing as a truck blower distributor in Wisconsin. First, as defendant knew, Stuart Tank has a competitive advantage over plaintiff because it already sells Drum, another brand of truck blowers; with the addition of Gardner Denver truck blowers, Stuart Tank offers a broader selection of truck blowers than plaintiff can. Second, before Stuart Tank was assigned as a distributor in Wisconsin, plaintiff had no intrabrand competition in Wisconsin (except, perhaps, with distributors making incidental sales of Gardner Denver truck blowers; it appears, however, that those distributors did not receive a discount on truck blowers from defendant). Because plaintiff is now only one-half of the available distributors and has a narrower line of truck blowers available than the newly added distributor, the impact on plaintiff is substantial.

If, as I have concluded, defendant's appointment of a second distributor in Wisconsin was a "substantial change in competitive circumstances" for plaintiff, the question is whether the notice and cure requirements of the statute apply.  Under these provisions, a grantor must provide a dealer "at least 90 days' prior written notice," explaining the reasons for the change, and give the dealer 60 days "in which to rectify any claimed deficiency."  Wis. Stat. § 135.04.  In this case, defendant did not appoint a second distributor because it believed that plaintiff had any deficiency but because it believed that the second distributor would be a "natural fit" that would sell better in the territory.  Technically, a "better" second distributor could be understood to be a "deficiency" of plaintiff's distribution.  Michael Bowen & Brian Butler, The Wisconsin Fair Dealership Law § 7.15 (3d ed. 2007) (suggesting that need for additional dealer might be read to imply "deficiency" of dealer).  However, such a reading could turn nonexclusive dealership agreements such as the one between the parties in this case into exclusive dealership agreements:  every time a new dealer was appointed, the dealer would have an opportunity to cure and hold onto its status as sole dealer.  Id.; see also Al Bishop Agency, Inc. v. Lithonia-Division of Natural Service Industries, Inc., 474 F. Supp. 828, 835 (E.D. Wis. 1979) (grantor cannot impose "unreasonable" cure requirements, suggesting that if it would be unreasonable to require dealer to cure in 60 days, dealer may be entitled to longer time).  The term "deficiency" is better understood as a dealer's failure to live up to the grantor's expectations of it.

20

Defendant did not expect plaintiff to control the Wisconsin market; it had other expectations for it, none of which are the reason for defendant's assignment of Stuart Tank. In this setting, there is no "deficiency" to be claimed and no need to provide 60 days to cure it. See also Designs in Medicine, Inc. v. Xomed, Inc., 522 F. Supp. 1054, 1060 (E.D. Wis. 1981) ("When the decision to terminate a dealership is not based on any claimed deficiency, the 90-day notice need only set out the reasons for termination").

Because defendant failed to provide the 90-day written notice before it assigned a second distributor in Wisconsin, it violated the requirements of Wis. Stat. § 135.04 and plaintiff's motion for summary judgment on this claim will be granted.  However, plaintiffs are not entitled to an opportunity to cure under § 135.04.

3.  Scope of remedies

This conclusion leads to still another question, which is what remedies are available to plaintiff for defendant's failure to provide the written notice required under § 135.04? A dealer may seek damages or "injunctive relief against . . . unlawful substantial change of competitive circumstances" under Wis. Stat. § 135.06, and, when a dealer has a right to cure under § 135.04, it may seek injunctive relief to allow him a chance to cure the defect before facing the consequences of failing to cure.  Moodie v. School Book Fairs, Inc., 889 F.2d 739, 746 (7th Cir. 1989) (dealer could have sought injunctive relief to have opportunity to cure,

21

but still would face either curing defect or termination).   However, there is no basis for injunctive relief when a dealer has no right to cure; to allow an injunction in that setting would do more harm than good.  For example, in this case, such an injunction would require defendant to undo its assignment of a Stuart Tank for 90 days, after which it could simply renew the assignment.

As for damages, plaintiff is entitled to "damages sustained [by it] as a consequence of the grantor's violation" of § 135.04 by failing to provide 90 days' written notice.  Wis. Stat. § 135.06.  "To determine the damages sustained, it is necessary for the court to predict the profits that [plaintiff] would have sustained without the violation."  Moodie, 889 F.2d at 746.  Although such an amount may be difficult to estimate because plaintiff was not terminated and continues to make profits, this fact alone does not bar plaintiff from seeking damages.  Lindevig v. Dairy Equipment Co., 150 Wis.2d 731, 737-38, 442 N.W.2d 504, 507 (Ct. App. 1989).  The harder question is whether damages are determined on the premise that plaintiff would have had *another* 90 days as sole distributor or on the premise that plaintiff would have known about the distributorship 90 days *earlier*.  Because the scope of plaintiff's damages is unclear, it would be helpful for the court to have counsel brief the issue before trial.  Plaintiff will have 10 days from this order in which to submit a brief addressing the issue of damages and defendant will have 5 days from the date it receives notice of that submission in which to respond.

22

D.  <u>Motion for Summary Declaratory Judgment</u>

In its motion for partial summary judgment, plaintiff requested summary judgment on several issues framed as requests for declaratory judgment.  Plaintiff moved for declarations that (a) plaintiff is a protected "dealer" under the Wisconsin Fair Dealership Act; (b) defendant's assignment of a second distributor in Wisconsin is a "substantial change to the competitive circumstances of its distributorship" agreement with plaintiff; (c) defendant's assignment of a second distributor in Wisconsin be is without good cause; and (d) defendant's assignment of a second distributor in Wisconsin was a "substantial change to the competitive circumstances" of plaintiff's dealership under Wis. Stat. § 135.04. Because I have decided these issues in the course of ruling on plaintiff's claims, plaintiff's separate request for a declaratory judgment on these issues will be denied as moot.


ORDER

IT IS ORDERED that

1.  Defendant Gardner Denver, Inc.'s motion for summary judgment is DENIED on plaintiff The Wisconsin Compressed Air Corporation's claims that defendant violated Wis. Stat. § 135.04 by failing to provide 90 days' written notice before assigning a second distributor in Wisconsin.

2.  Defendant's motion for summary judgment is GRANTED on plaintiff's claims

23

that:

     a.  defendant breached the parties' distributorship agreement by assigning a second distributor in Wisconsin, failing to maintain reasonable communication, delaying the processing of warranty claims, failing to deliver products in a timely fashion, failing to provide plaintiff with access to necessary information readily available to Stuart Tank or providing Stuart Tank with favorable treatment through exclusive product line appointment and training;

     b.  defendant breached an implied covenant of good faith and fair dealing by assigning a second distributor in Wisconsin; and

     c.  defendant violated Wis. Stat. § 135.03 by assigning a second distributor in Wisconsin;

3.  Plaintiff's motion for partial summary judgment is DENIED on plaintiff's claim that defendant violated Wis. Stat. § 135.03 by assigning a second distributor in Wisconsin and DENIED as moot on plaintiff's claims that:

     a.  plaintiff be declared a protected "dealer" under the Wisconsin Fair Dealership Act;

     b. defendant's assignment of a second distributor in Wisconsin be declared to constitute a "substantial change to the competitive circumstances of its distributorship" agreement with plaintiff;

    c.  defendant's assignment of a second distributor in Wisconsin be declared without good cause;

    d. defendant's assignment of a second distributor in Wisconsin be declared to constitute a "substantial change to the competitive circumstances" of plaintiff's dealership under Wis. Stat. § 135.04;

    4.  Plaintiff's motion for partial summary judgment is GRANTED on plaintiff's claims that defendant violated Wis. Stat. § 135.04 by failing to provide 90 days' written notice before assigning a second distributor in Wisconsin.

    5.  Plaintiff will have 10 days from this order in which to submit a brief addressing the issue of damages and defendant will have 5 days from the date it receives notice of that submission in which to respond.

    Entered this 27th day of June, 2008.

            BY THE COURT:

            *Barbara B. Crabb*

            _____

            BARBARA B. CRABB
            District Judge