IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE WISCONSIN COMPRESSED
AIR CORPORATION,

                                                                                        OPINION and ORDER

                         Plaintiff,

                                                                                         07-cv-508-bbc

     v.

GARDNER DENVER, INC.,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This case is before the court on plaintiff The Wisconsin Compressed Air Corporation's motion for attorneys' fees and costs filed pursuant to Fed. R. Civ. P. 54.

      Plaintiff asks that it be awarded $64,958.37 in fees and costs pursuant to Wis. Stat. §135.06. Plaintiff calculated this sum by discounting its counsel's bills to exclude time spent on claims it views as wholly separate from the claim upon which it prevailed, which included Wisconsin Fair Dealership Law issues. Defendant Gardner Denver, Inc. concedes that plaintiff is entitled to some award, but asks that plaintiff receive no more than $10,000. Defendant has not contested the accuracy of plaintiff's billing records, but arrives at this lower estimate for two reasons: 1) plaintiff's fees and costs must be strictly apportioned on

1

a claim-by-claim basis and all sums attributable to its unsuccessful dealership claim must be excluded; and 2) the award must be further reduced because plaintiff achieved limited success, as measured by its damage recovery of $5,000 and the dismissal of all but one of its claims.

After careful consideration of the parties' submissions, I conclude that plaintiff's award must be reduced by one-half. This reduction takes into account both the dismissal of plaintiff's breach of contract and breach of covenant claims and the limited relief won on its dealership claims. Thus, plaintiff is entitled to reasonable actual attorneys' fees and costs of $32,479.19.

OPINION

A. <u>Background</u>

1. <u>Truck blower distributor agreement</u>

On August 1, 1996, the parties entered into a distributorship agreement that designated plaintiff as a non-exclusive dealer of defendant's truck blowers in Wisconsin. Plaintiff was the only dealer of defendant's products from 1989 until October 3, 2006. On October 3, 2006, defendant authorized another company, Stuart Tank, to sell its truck blower products in Wisconsin.

2. Procedural history

In August 2007, plaintiff filed its complaint against Gardner Denver. Plaintiff advanced claims for breach of contract and breach of an implied covenant of good faith and fair dealing. Specifically, plaintiff alleged that defendant violated the agreement by appointing a second dealer in plaintiff's territory, failing to maintain reasonable communication, delaying the processing of warranty claims, failing to deliver products in a timely fashion, failing to provide plaintiff with access to necessary information readily available to Stuart Tank and providing Stuart Tank with favorable treatment.

Plaintiff also advanced two claims for violation of the Wisconsin Fair Dealership Law. Specifically, plaintiff alleged that defendant violated Wis. Stat. §135.03 when it appointed another dealer without good cause, an action that caused a substantial change to the competitive circumstances of plaintiff's dealership. In addition, plaintiff alleged that defendant violated Wis. Stat. §135.04 by failing to provide 90 days' notice of this substantial change to its competitive circumstances.

Both sides moved for summary judgment. Defendant litigated its contention that the agreement between the parties constituted a dealership up until it conceded the point on summary judgment without advising plaintiff. In an order entered on June 27, 2008, I granted defendant's motion for summary judgment in part, dismissing plaintiff's claims for breach of contract and breach of covenant and its claim that defendant violated Wis. Stat.

3

§135.03 of the Wisconsin Fair Dealership Law by assigning a second distributor to plaintiff's sales territory. However, I granted plaintiff's motion for summary judgment in part, on its claim that defendant violated Wis. Stat. §135.04 of the Wisconsin Fair Dealership Law by failing to provide 90 days' written notice of the assignment of an additional distributor to plaintiff's sales territory. In so ruling, I concluded that the agreement between the parties constituted a dealership under the Wisconsin Fair Dealership Law.

Following this decision, the parties stipulated that the damages caused by defendant's violation amounted to $5,000. Judgment against defendant for this amount was entered on July 14, 2008.

### B. Calculation of the Lodestar

Under Wis. Stat. §135.06, a party who, like plaintiff, has won a claim under the Wisconsin Fair Dealership Law, is entitled to an award of "reasonable actual attorney fees." The starting point for any award of attorney fees by a federal court is the calculation of the "lodestar." See generally, Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Mathur v. Board of Trustees of Southern Illinois University, 317 F.3d 738, 742 (7th Cir. 2003); Dutchak v. Central States, Southeast and Southwest Areas Pension Fund, 932 F.2d 591, 596 (7th Cir. 1991). Wisconsin courts follow the same lodestar analysis. Kolupar v. Wilde Pontiac Cadillac, Inc., 2004 WI 112, ¶30, 275 Wis. 2d 16, 83 N.W.2d 58 (2004) (adopting

4

Hensley); Standard Theatres v. State Department of Transportatin, 118 Wis. 2d 730, 749-50, 349 N.W.2d 661, 671-672 (1984)(including most of the factors listed in Hensley). Accordingly, when applying Wis. Stat. §135.06, both federal and Wisconsin courts have used the Hensley analysis to determine reasonable attorney fees.  See Bright v. Land O'Lakes, Inc., 844 F.2d 436 (7th Cir. 1988)(citing Hensley); Siegel v. Leer, Inc., 156 Wis. 2d 621, 457 N.W.2d 533 (Ct. App. 1990)(citing Standard Theatres).

The lodestar figure represents "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. at 433. Determination of the number of hours reasonably expended and the reasonable hourly rate is a matter within the district court's sound discretion. Gekas v. Attorney Registration and Disciplinary Commission of Supreme Court of Illinois, 793 F.2d 846 (7th Cir. 1986); Tomazzoli v. Sheedy, 804 F.2d 93, 97 (7th Cir. 1986)("district court's calculation is anything but an arithmetical exercise").

Once the court calculates the lodestar, it may make appropriate adjustments to increase or decrease the award in light of a number of considerations, including "the amount involved and the results obtained." Lynch v. City of Milwaukee, 747 F.2d 423, 426 (7th Cir. 1984)(citing Hensley, 461 U.S. at 429-30 n. 3); see also Spellan v. Board of Education for District 11, 59 F.3d 642, 645 (7th Cir. 1995).  The court may consider this factor in making the initial lodestar calculation or in determining whether to modify the lodestar

5

figure. Lynch, 747 F.2d at 426.

1. Reasonable hours expended

To determine the appropriate number of hours for the lodestar calculation, a district court should eliminate all hours spent on claims unrelated to the successful claims. Hensley, 461 U.S. at 434-35; Lenard v. Argento, 808 F.2d 1242, 1245-47 (7th Cir. 1987). Courts have interpreted Wis. Stat. §135.06 as limiting a dealer's recovery to attorney fees and costs related to successful fair dealership claims. Bright, 844 F.2d at 442 (finding no abuse of discretion in district court's decision to eliminate attorney fees under §135.06 incurred in unsuccessful claims); Lindevig v. Dairy Equipment Co., 150 Wis.2d 731, 742, 442 N.W.2d 504, 509 (Ct. App. 1989)("plaintiffs are not entitled to attorney fees [under §135.06] related to their unsuccessful claims.").

Claims are not related if they are "distinctly different" from the successful claims and depend on "different facts and legal theories." Illinois Welfare Rights Org. v. Miller, 723 F.2d 564, 567 (7th Cir. 1983); Hensley, 461 U.S. at 434-35. If, however, an unsuccessful claim is related to a successful claim by a "common core of facts" or depends on related legal theories, it should not be excluded. Spellan, 59 F.3d at 645-6 (citing Illinois Welfare Rights Org., 723 F.2d at 567). Instead, the court is to undertake a second analysis and focus on the overall results obtained to determine whether it should compensate the plaintiff for the

6

hours spent on the related but unsuccessful claims. Hensley, 461 U.S. at 438-40; Spellan, 59 F.3d at 645-46.

Plaintiff concedes that its breach of contract and breach of covenant claims are not related to its dealership claims and has excluded time spent on these unrelated claims from its fee request. However, plaintiff contends that its two dealership claims are related because they arose from a common core of facts and related legal theories. Defendant contends that none of plaintiff's claims were related and that only those fees and costs related to plaintiff's one successful dealership claim are payable.

Plaintiff's two dealership claims are related under Hensley. Each relied on the same common core of facts, including proof of all the elements necessary to constitute a dealership, proof that a dealership existed between the parties, and proof that appointment of a second dealer amounted to a substantial change in competitive circumstances. The successful §135.04 dealership claim required only additional proof of deficiency of notice. Further, the two claims drew on the same body of statutory law.

I am satisfied from my review of plaintiff's records and the affidavit of its attorney that plaintiff has met its burden of documenting its fee request. Plaintiff has documented its fees and costs and explained how it limited its fee request to time spent on dealership issues. These issues included the history and relationship of the parties, proof of the elements of a dealership, the impact of the additional dealer and resulting damages.

7

Defendant has not seriously challenged plaintiff's records or accounting, making only unsupported statements in its reply brief that plaintiff's math and logic were difficult to follow and that some of plaintiff's counsel's records were insufficiently detailed.

Defendant notes correctly that plaintiff has excluded only slightly less than a quarter of its fees and costs as unrelated to the dealership claims. The lopsided nature of this exclusion is understandable, however. In fact, it stems in part from defendant's own conduct. Defendant denied that the agreement between the parties constituted a dealership up until its summary judgment motion, at which time it conceded the point without advising plaintiff. As a result, plaintiff's motion for summary judgment included extensive evidence, proposed findings of fact and analysis relevant to this issue alone. Defendant's argument that proving a dealership relationship could not have consumed a significant amount of plaintiff's counsel's time because defendant "did not contest the point" is simply disingenuous. "A defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." Graham v. Sauk Prairie Police Commission, 915 F.2d 1085, 1109 (7th Cir. 1990).

Additionally, although the breach of contract and breach of covenant claims outnumbered the fair dealership claims, the breach claims were largely duplicative, concerned the interpretation of basic contractual language and received less attention in the parties' pleadings and discovery than the dealership claims.

8

Accordingly, I decline to reduce plaintiff's fee request on the basis of the allocation of reasonable hours expended on the dealership claims.

2. Reasonable hourly rates

Plaintiff has proposed $275 as the "reasonable hourly rate" to use in determining attorneys fees. Since this is counsel's actual billing rate, it is presumptively appropriate. People Who Care v. Rockford Board of Education, 90 F.3d 1307, 1310 (7th Cir. 1996); Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993). Because defendant has not contested this presumption, it will be accepted.

3. Reduction of lodestar

Where, as here, plaintiff has not prevailed on all of its related claims, the court must decide whether to reduce the lodestar. The court must focus on the overall results obtained on all related claims to determine whether it should compensate the plaintiff for the hours spent on the related, but unsuccessful, claims. Hensley, 461 U.S. at 438-40; Spellan, 59 F.3d at 645-46. A reduced fee award is appropriate if the relief won, no matter how significant, is limited in comparison to the entirety of the related claims. Hensley, 461 U.S. at 440. A court must award an amount that is reasonable in relation to the results obtained. Id.

9

Defendant contends that the initial lodestar figure should be significantly reduced in light of the overall results obtained, which it alleges were unimpressive in two ways: 1) plaintiff prevailed on only one dealership claim and 2) plaintiff won only $5,000 in damages, far below its damage estimates, which ranged from $276,000 to $342,000. Plaintiff argues that the lodestar figure should not be reduced because it obtained two significant forms of relief: 1) the $5,000 in damages; and 2) a finding that the agreement between the parties constituted a dealership under the Wisconsin Fair Dealership Law. Plaintiff terms this finding its overall objective in the litigation.

Because of the limited relief obtained by plaintiff on its two related dealership claims, the lodestar should be reduced. Plaintiff scored a limited victory. As defendant points out, plaintiff obtained a judgment for $5,000, slightly less than 2% of its lowest estimate of damages. Second, plaintiff lost on the more significant of its two dealership claims, on the ground that the distributorship agreement was non-exclusive. Third, plaintiff somewhat overstates the impact of this court's holding that the relationship between the parties constitutes a dealership. Even if the Fair Dealership Law applies, the contract between the parties remains non-exclusive, leaving plaintiff with limited recourse if future dealers are added in its sales territory. Further, given defendant's freedom to appoint new dealers, plaintiff has a right to cure deficiencies in only a narrow set of circumstances. However plaintiff is entitled to notice of any such change under §135.06. Of more significance,

10

§135.03 may protect plaintiff from termination or non-renewal of its dealership without good cause. At the same time, plaintiff's request for fees and costs should not be eliminated in its entirety. This case is distinct from those denying fees entirely because the prevailing party won no more than a de minimis victory. See, e.g., Farrar v. Hobby, 506 U.S. 103, 114-15 (1992) (no fees or costs awarded where prevailing party won only a $1 jury award). Plaintiff won both a modest amount of damages and the protection of the Wisconsin Fair Dealership Law, including a statutory prohibition against termination of its dealership without good cause. Nor should plaintiff's request be reduced simply to accord numerically either with its 2% damage recovery or the number of issues on which it prevailed, as defendant suggests. Such mathematical exercises improperly ignore the Hensley analysis. Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc., 776 F.2d 646, 653 (7th Cir. 1985) (abuse of discretion to reduce fee award based on ratio of successful to unsuccessful claims).

In my judgment, plaintiff's request for fees and costs must be reduced by one-half. I measure plaintiff's success based primarily on its monetary recovery of $5,000. In a private action seeking money damages, even limited monetary recovery is a reasonable measure of success. Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 558 n.7 (7th Cir. 1999) (monetary recovery used to gauge success where plaintiff recovered only 4% of damages sought).

In similar cases of limited monetary recovery, lodestar reductions of 50% have been

11

upheld as within a district court's discretion. In <u>Spegon v. Catholic Bishop of Chicago</u>, the court of appeals held that the district court properly used its discretion in reducing the lodestar figure by 50% to acknowledge plaintiff's limited success. Much like plaintiff in this case, the plaintiff in <u>Spegon</u> won only about 4% of the relief demanded. <u>Id.</u> In <u>Spanish Action Committee of Chicago v. City of Chicago</u>, 811 F.2d 1129, 1137 (7th Cir. 1987), the district court used its discretion to reduce plaintiff's fee request by half to account for the simplicity of the case and the plaintiff's limited success. In that case, limited success was measured by dismissal of plaintiff's punitive damage claims, resulting in a monetary recovery that "did not come close to giving the plaintiff all that it had asked for." <u>Id.</u> at 1135. By contrast, a lesser lodestar reduction is appropriate where a plaintiff realizes significantly more success. In <u>Nanetti v. University of Illinois at Chicago</u>, 944 F.2d 1416 (7th Cir. 1991), the district court used its discretion to reduce the lodestar by 35%. In contrast to this case, however, the plaintiff had a 58% success rate in the litigation, based on its monetary recovery. <u>Id.</u> at 1421.

    Finally, I also measure plaintiff's success by its vindication of the public policy goals of the Fair Dealership Law. Plaintiff won recognition as a dealer under the Fair Dealership Law and the protections that status affords. This protection is at the heart of the remedial purposes of the Fair Dealership Law, which include promoting the public's interest in fair business relations between dealers and grantors and protecting dealers against unfair

12

treatment by grantors. Wis. Stat. §135.025(2)(a)-(b). When implicated, such public policy concerns can also be a proper measure of success. Spanish Action Committee of Chicago, 811 F.2d at 1135-36 (level of success in civil rights action could be properly gauged both by monetary recovery and injunctive relief); Lynch, 747 F2d at 429 (error for district court to ignore vindication of public policy when measuring plaintiff's success in civil rights lawsuit). By this measure, plaintiff has won a victory more significant than its monetary recovery suggests.

Accordingly, I conclude that, as in Spegon and Spanish Action Committee, the lodestar calculation should be reduced by 50%.

ORDER

IT IS ORDERED that the application for attorney fees and actual costs of plaintiff The Wisconsin Compressed Air Corporation is GRANTED. Plaintiff is awarded $32,479.19.

Entered this 22nd day of September, 2008.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge

13